## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TIRRELL WELLS**                                             **CIVIL ACTION**

**VERSUS**                                                    **NO.  07-8056**

**JEFFERY TRAVIS, WARDEN**                                    **SECTION "B"(2)**


### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE** because petitioner's claims are procedurally barred from federal review.

_____

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Tirrell Wells, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On February 28, 1996, Wells was charged by bill of information in Jefferson Parish with one count of possession with intent to distribute cocaine.[3]  The bill of information was later amended on September 30, 1997, to add that Wells already had a prior conviction in Orleans Parish for possession with intent to distribute cocaine.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Narcotics Agent Todd Vignes of the Jefferson Parish Sheriff's Office (JPSO), testified that, on February 16, 1996, at approximately 9:15 p.m., he and Deputy David Greenwood also of the JPSO were preparing to go on patrol.  They passed 11632 Creston Road in River Ridge and observed the Defendant and two other people washing a car.  Agent Vignes testified that they recognized the Defendant and knew that there was an outstanding attachment on him.
> Agent Vignes and Deputy Greenwood stopped to talk with the Defendant.  According to Agent Vignes, the Defendant claimed not to be Tirrell Wells, and stated that he was only washing his car, and that Tirrell Wells was on the other side of the railroad tracks.  The Defendant was then handcuffed and patted down for weapons.  Agent Vignes testified that, while they were talking with the other two people who were washing the car, the Defendant began reaching into the back part of his pants.  Agent Vignes went over to the Defendant to conduct a search incident to his arrest.  According to Agent Vignes, the Defendant claimed that he did not have anything on him, and the Defendant pulled down his pants and underwear.  Agent Vignes testified that he did not find any weapons and told the Defendant to pull up his clothes.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Bill of Information, 2/28/96.

[4]Id., hand written amendment dated 9/30/97; St. Rec. Vol. 3 of 7, Hearing Transcript, 9/30/97.

While Agent Vignes continued the investigation of the other two people, he noticed the Defendant again was reaching into the back part of his pants. Agent Vignes testified that "he thought something was up" and went back over to the Defendant. As the Defendant pulled down his pants, Agent Vignes reached underneath his pants, under his buttocks, and felt a package containing small rocks. Agent Vignes testified that he retrieved a clear plastic bag containing 50 small rocks. He conducted a field test on one of the rocks and found that it tested positive for cocaine.

On cross-examination, Agent Vignes stated that he had information from an informant that the Defendant was selling crack cocaine at that specific residence. Agent Vignes explained that on a previous occasion, an informant was with officers and pointed out the Defendant. The officers dropped off the informant to protect his identity and went back to get the Defendant. According to Agent Vignes, when they went back, the Defendant was no longer there. Agent Vignes testified that his partner had learned of the attachment at that time.

Deputy Greenwood testified that he was working with Agent Vignes on February 16, 1996, around 9:15 p.m. He and Agent Vignes were en route to the 4th District to pick up a patrol car in order to go on duty. He and Agent Vignes were in separate cars at that time and they did not stop immediately at Creston Street, where the Defendant was washing the car. Deputy Greenwood stated that when they arrived at the 4th District, he advised Agent Vignes that they had just passed Tirrell Wells. Officers Vignes and Deputy Greenwood picked up the patrol car and together they went back to Creston Street to where the Defendant was washing the car.

Deputy Greenwood testified that upon approaching the Defendant, he denied that he was Tirrell Wells. He knew the individual was Tirrell Wells and that he was not telling the truth. Deputy Greenwood arrested the Defendant and advised him of the attachment and his constitutional rights. After handcuffing the Defendant, Deputy Greenwood began questioning the other two individuals, a male and a female, who were also present. Deputy Greenwood observed the Defendant moving around and putting his hands in his pants. He also stated that the Defendant pulled down his pants.

Officer Daniel Waguespack of the JPSO Crime Lab testified as an expert in scientific analysis. He testified that he took a small portion of the evidence seized from the Defendant, performed various tests, and found it to be cocaine.

Sergeant Emile Larson of the JPSO Narcotics Enforcement Group testified as an expert in the field of narcotics investigation and interdiction. He testified that the 50 rocks of crack cocaine found on the Defendant were packaged individually, and in his opinion, to be sold wholesale and was not for personal use.

State v. Wells, 815 So.2d 1063, 1064-65 (La. App. 5th Cir. 2002); State Record Volume 1 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 01-KA-1276, pages 2-5, March 26, 2002.

Wells was tried before a jury on October 2, 1997, and he was found guilty as charged.[5]  At a hearing held on October 16, 1997, the state trial court sentenced Wells to serve 60 years in prison at hard labor as a second felony offender based on the allegations of the amended bill of information.[6]  Well's counsel orally notified the court of the intent to appeal, but did not file a timely written notice.

Accordingly, Wells's conviction became final five days, on October 23, 1998, 2004, because he did not seek reconsideration of his sentence or file a notice of appeal. See Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's conviction became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[7]); Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal

---

[5]St. Rec. Vol. 1 of 5, Trial Minutes (2 pages), 10/2/97; Jury Verdict, 10/2/97; St. Rec. Vol. 3 of 7, Trial Transcript, 10/2/97.

[6]St. Rec. Vol. 3 of 7, Sentencing Minutes, 10/16/97.

[7]La. Code Crim. P. art. 914 requires a criminal defendant to move for leave to appeal within thirty days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal.  State v. Counterman, 475 So.2d 336, 338 (La. 1985).

process); <u>McGee v. Cain</u>, 104 Fed. Appx. 989, 991 (5th Cir. 2004) (same); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period).

More than two years later, on November 29, 1999, Wells filed an application for post-conviction relief through retained counsel raising two grounds for relief:[8] (1) Trial counsel gave ineffective assistance. (2) There was insufficient evidence to convict.  On March 21, 2000, the state trial court denied the application, finding no merit to the first claim and finding that the second claim was only reviewable on direct appeal.[9]

Two months later, on May 31, 2000, Wells's counsel filed a motion to reconsider the application for post-conviction relief on grounds that counsel had overlooked the deadline to file a supporting memorandum.[10]  Counsel argued that trial counsel was ineffective for failure to object to the reading of the bill of information to the jury because it contained information regarding the prior conviction.  He also alleged that trial counsel should have objected to the sentence as excessive.  The state trial court later

---

[8]St. Rec. Vol. 1 of 7, Application for Post Conviction Relief, 11/29/99.

[9]St. Rec. Vol. 1 of 7, Trial Court Order, 3/21/00.

[10]St. Rec. Vol. 1 of 7, Motion to Reconsider, 5/31/00.

denied the motion on August 16, 2000, finding no error in its prior ruling and noting that counsel failed to submit a memorandum in support as the court had previously ordered.[11]

On September 27, 2000, Wells filed a pro se motion for leave to file an out-of-time appeal, noting that his trial counsel never lodged a direct appeal from his conviction and sentence.[12]  The state trial court denied the motion on October 5, 2000, because Wells had counsel of record.[13]

Thereafter, on October 30, 2000, Wells's counsel filed a second motion to reconsider the denial of the previous application for post-conviction relief.[14]  The state trial court denied the motion without reasons on November 28, 2000.[15]

In the meantime, on November 27, 2000, Wells filed a pro se application for post-conviction relief based on two grounds:[16] (1) He was denied effective assistance of counsel on appeal because his counsel failed to file the appeal to raise the issues of the misapplication of the sentencing statute, trial court error in reading the bill of information

---

[11]St. Rec. Vol. 1 of 7, Trial Court Judgment, 8/16/00; Trial Court Order, 6/21/00; Minute Entry, 6/21/00; St. Rec. Vol. 5 of 7, Hearing Transcript, 6/21/00.

[12]St. Rec. Vol. 1 of 7, Motion for Out-of-Time Appeal, 9/27/00.

[13]St. Rec. Vol. 1 of 7, Trial Court Order, 10/5/00.

[14]St. Rec. Vol. 1 of 7, Motion to Reconsider, 10/30/00.

[15]St. Rec. Vol. 1 of 7, Trial Court Order, 11/28/00.

[16]St. Rec. Vol. 1 of 7, Application for Post Conviction Relief, 11/27/00.

to the jury and improper closing arguments by the state. (2) He was constructively denied effective assistance of counsel on direct appeal because no appeal was ever filed.  On December 11, 2000, the state trial court denied the application as prescribed or untimely, having been filed more than three years after the conviction.[17]

On review of this decision, the Louisiana Fifth Circuit Court of Appeal held that the application for post-conviction relief was timely filed under La. Code Crim. P. art. 930.8[18] and remanded the matter for further proceedings.[19]  Wells also filed a motion in the state trial court for an evidentiary hearing on the application for post-conviction relief.[20]   Thereafter, on May 25, 2001, the state trial court, after reiterating the untimeliness of the application, granted Wells an out-of-time appeal and appointed him counsel.[21]

On appeal, Wells's counsel raised two grounds for relief:[22] (1) The trial court erred in sentencing him to 60 years in prison because there was no evidence of the prior

---

[17]St. Rec. Vol. 1 of 7, Trial Court Order, 12/11/00.

[18]At the time of his conviction, La. Code Crim. P. art. 930.8 provided a two-year period for a defendant to file for post-conviction relief in the state courts.

[19]St. Rec. Vol. 1 of 7, 5th Cir. Order, 01-KH-60, 1/24/01.  The record does not contain a copy of this writ application.  The filing date of January 22, 2001, appears on the face of the order and was confirmed by a member of my staff with the office of the clerk of court for the Louisiana Fifth Circuit.

[20]St. Rec. Vol. 1 of 7, Motion for Evidentiary Hearing, 5/17/01.

[21]St. Rec. Vol. 1 of 7, Trial Court Order, 5/25/01.

[22]State v. Wells, 815 So.2d at 1063; St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 01-KA-1276, 3/26/02.

7

conviction in the record. (2) It was prejudicial error for the trial court to allow the amended bill of information to be read to the jury in light of its reference to the prior conviction.

On March 26, 2002, the Louisiana Fifth Circuit affirmed the conviction but reversed the sentence.[23]  The court held that the sentence enhancement was not done in accordance with the applicable habitual offender laws and could not be done solely on the allegations in the amended bill of information, since no evidence of the prior conviction had been placed into the record.

The court also resolved that it was error for the trial court to read the amended bill of information into the record because of its reference to the prior conviction.  However, the court determined that the error was harmless in light of the overwhelming evidence of Wells's guilt.  The court remanded the case for resentencing.  Wells did not pursue further review of this ruling in the Louisiana Supreme Court.

On February 20, 2003, Wells's counsel filed an anticipatory motion to quash the multiple bill, which had not yet been filed, on grounds that it would violate double jeopardy concepts and would be based on insufficient evidence.[24]  At the hearing held on March 27, 2003, the state trial court sentenced Wells to 30 years in prison without benefit

---

[23]Id.

[24]St. Rec. Vol. 1of 7, Motion to Quash Multiple Bill of Information, 2/20/03.

of parole, probation or suspension of sentence.[25]   The court also advised that the premature motion to quash would be taken up only if a multiple bill was filed by the State.  The State did just that on April 16, 2003, charging Wells as a second offender.[26]

At a hearing held on July 16, 2003, the state trial court denied Wells's motion to quash the multiple bill.[27]  The court found Wells to be a second offender and sentenced him to serve 30 years in prison without benefit of probation or suspension of sentence. Wells appealed raising two grounds for relief:[28] (1) The trial court erred in denying the motion to quash the multiple bill which was based on double jeopardy, untimely filing, insufficient evidence and denial of an arraignment. (2) The sentence was excessive and based on an improper enhancement.

In the meantime, on June 10, 2004, Wells's counsel filed a motion to correct the sentence as illegal, alleging that the court failed to indicate whether the sentence was to run concurrently or consecutively to his other sentences, which resulted in an extensive

---

[25]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/27/03; St. Rec. Vol. 3 of 7, Sentencing Transcript, 3/27/03.

[26]St. Rec. Vol. 1 of 7, Multiple Bill, 4/16/03.

[27]St. Rec. Vol. 1 of 7, Sentencing Minutes, 7/16/03; St. Rec. Vol. 3 of 7, Sentencing Transcript, 7/16/03.

[28]State v. Wells, 888 So.2d 1170 (La. App. 5th Cir. 2004) (Table); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 04-KA-648, 12/14/04; St. Rec. Vol. 3 of 7, Appeal Brief, 2004-KA-0648 (undated).

delay in Wells's good-time eligibility.[29]  The state trial court did not immediately rule on this motion.

Shortly thereafter, on December 14, 2004, the Louisiana Fifth Circuit affirmed Wells's sentence.[30]  The court resolved that double jeopardy considerations were not applicable to multiple bill proceedings.  The court also held that Wells had waived the issues of timeliness of the multiple bill, failure to arraign and sufficiency of the evidence because no such objections were preserved for appeal by raising them at the trial court level.  The court further concluded that the sentence was not excessive and that other challenges to the propriety of the sentence had been waived because of the lack of objections at the trial court level.  The court remanded the matter for the trial court to notify Wells of the applicable post-conviction limitations.

The trial court complied with this directive on January 3, 2005.[31]  Wells's subsequent writ application to the Louisiana Supreme Court was denied without reasons on May 13, 2005.[32]

---

[29]St. Rec. Vol. 2 of 7, Motion to Correct Illegal Sentence, 6/10/04.

[30]State v. Wells, 888 So.2d at 1170 (Table); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 04-KA-648, 12/14/04.

[31]St. Rec. Vol. 2 of 7, Trial Court Notice, 1/3/05.

[32]State v. Wells, 902 So.2d 1018 (La. 2005); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2005-KO-0402, 5/13/05; La. S. Ct. Writ Application, 05-KO-0402, 2/17/05 (postmark 1/14/05); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2005-KO-402, 2/17/05 (postmark 1/14/05).

In the meantime, on April 8, 2005, the state trial court denied Wells's pending motion to correct an illegal sentence.[33] Wells sought review of this order in the Louisiana Fifth Circuit.[34] The court denied relief on May 20, 2005, finding no error in the trial court's ruling.[35] The court also denied his request for rehearing.[36]

Wells also sought review of the denial of the motion to correct illegal sentence in the Louisiana Supreme Court.[37] The court eventually denied relief on April 17, 2006, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[38]

While that writ application was pending, Wells returned to the state trial court on October 31, 2005, to file another application for post-conviction relief in which he raised

---

[33]St. Rec. Vol. 2 of 7, Trial Court Order, 4/8/05.

[34]The record does not contain a copy of this writ application. The filing date, May 17, 2005, appears on the face of the order and has been confirmed by a member of my staff with the office of the clerk of court for the Louisiana Fifth Circuit.

[35]St. Rec. Vol. 2 of 7, 5th Cir. Order, 05-KH-525, 5/20/05.

[36]St. Rec. Vol. 2 of 7, 5th Cir. Order, 05-KH-599, 6/7/05.

[37]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 05-KH-1979, 7/28/05 (postmark 6/24/05); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2005-KH-1979, 7/28/05 (postmark 6/24/05).

[38]State ex rel. Wells v. State, 926 So.2d 505 (La. 2006); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2005-KH-1979, 4/17/06.  In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

six grounds for relief:[39] (1) The state trial court violated double jeopardy by enhancing his sentence after the State's first attempt to do so was reversed due to insufficient evidence. (2) The state trial court lacked jurisdiction to sentence him as a multiple offender. (3) The state trial court erred in admitting "other crimes" evidence by reading the amended bill of information to the jury. (4) Louisiana's sentencing scheme is unconstitutional in that he did not receive a jury trial on the issue of enhancement. (5) He was denied the right to a jury trial on the multiple bill. (6) The State's closing argument was improper.

The state trial court denied the application on November 8, 2005.[40]  The court found the first five claims to be repetitive of claims raised in the prior appeals and the sixth claim procedurally barred from review without a showing of good cause, pursuant to La. Code Crim. P. art. 930.4(F).[41]  His subsequent writ application to the Louisiana Fifth Circuit was denied on December 16, 2005.[42]

---

[39]St. Rec. Vol. 2 of 7, Uniform Application for Post Conviction Relief, 10/31/05.

[40]St. Rec. Vol. 2 of 7, Trial Court Order, 11/8/05.

[41]Article 930.4(F) provides that, if a court considers dismissal of a claim under La. Code Crim P. art. 930.4 for failure to raise a claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall direct the petitioner to state reasons for the failure.  If the failure was excusable, the court will proceed to the merits.

[42]St. Rec. Vol. 3 of 7, 5th Cir. Order, 05-KH-986, 12/16/05. The record does not contain a copy of this writ application.  The date of filing, December 13, 2005, appears on the face of the order and has been confirmed by a member of my staff with the office of the clerk of court for the Louisiana Fifth Circuit.

Wells also sought review in the Louisiana Supreme Court.[43]  The court denied the application on November 17, 2006, citing La. Code Crim. P. art. 930.8, State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995),[44] La. Code Crim. P. art. 930.3, State ex rel. Melinie, and La. Code Crim. P. art. 930.4(A).[45]  The court also denied without reasons his request for reconsideration.[46]

## II.   FEDERAL HABEAS PETITION

On November 6, 2007, Wells filed a petition for federal habeas corpus relief through retained counsel raising six grounds for relief:[47] (1) The Double Jeopardy Clause and the Fifth Amendment were violated because the enhanced 30-year prison sentence effectively resulted in a 40-year prison sentence. (2) He was denied due process under the Fifth and Fourth Amendments where the state court lacked jurisdiction because of an untimely filed multiple bill. (3) He was denied due process under the Fifth and

---

[43]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 06-KH-0791, 4/7/06 (postmark 1/17/06); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2006-KH-791, 4/7/06 (1/17/06).  The court referenced a postmark of "1/18/06," however, the attached copy of the envelope shows a postal metering of "Jan 17, 2006."

[44]In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[45]State ex rel. Wells v. State, 942 So.2d 527 (La. 2006).

[46]State ex rel. Wells v. State, 948 So.2d 180 (La. 2007); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2006-KH-0791, 1/26/07.

[47]Rec. Doc. No. 1.  One must look to the memorandum in support to find the basis for the cryptic grounds for relief raised in the form petition.

13

Fourteenth Amendments because the jury heard reference to "other crimes" evidence through the reading of the amended bill of information. (4) He was denied due process and his right to jury trial under the Fifth, Sixth and Fourteenth Amendments under new rules of law announced in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 480 (2000), regarding the constitutional requirement of a jury to determine sentence enhancements. (5) He was denied due process and a jury trial under the Sixth and Fourteenth Amendments because Louisiana law does not require a jury during multiple offender proceedings. (6) He was denied due process under the Fifth, Sixth, Eighth and Fourteenth Amendments because of the State's improper closing arguments.

The State filed a response in opposition to the petition, alleging that Wells's petition is not timely filed and that five of the claims have not been exhausted because they are in procedural default.[48]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[49] and

---

[48]Rec. Doc. No. 9.

[49]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Wells's petition, which was filed by counsel on November 6, 2007.

 The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State has here raised the defenses

untimeliness and failure to exhaust.  The failure to exhaust is, as discussed below, based

on Wells's procedural default of the claims in the state courts.

 I find that the State's limitations and exhaustion defenses should be rejected for

the following reasons.  I will thereafter address the defense of procedural default.

A. <u>LIMITATIONS DEFENSE</u>

1. <u>Statutory Tolling</u>

 The State argues that Wells's federal petition was not filed within one year of the

finality of his underlying conviction on October 23, 1997.  The AEDPA requires a

petitioner to bring his Section 2254 petition within one year of the date his conviction

---

effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir.
1992).

became final.[50]   <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).   Under a literal

application of the statute, Wells had until October 23, 1998, to file his federal habeas

corpus petition, which he did not do.  His petition would therefore be untimely unless he

is entitled to tolling in one of the manners provided under the law.  28 U.S.C. §

2244(d)(2); <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000).  Most relevant

to Wells is the issue of statutory tolling.  Because Wells had no filings in the state court

between October 23, 1997, when his conviction was final, and November 29, 1999, when

his counsel filed the first application for post-conviction relief, the record is clear that

more than one year elapsed.

---

[50]The statute of limitations provision of the AEDPA provides for other triggers which do not
apply here:
    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus
by a person in custody pursuant to the judgment of a State court.  The limitation period
shall run from the latest of--

        A.      the date on which the judgment became final by the conclusion
of direct review or the expiration of the time for seeking such
review;

        B.      the date on which the impediment to filing an application created
by State action in violation of the Constitution or laws of the
United States is removed, if the applicant was prevented from
filing by such State actions;

        C.      the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly
recognized by the Supreme Court and made retroactively
applicable to cases on collateral review;  or

        D.      the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of
due diligence.

    (2) The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

The state also argues that his out-of-time appeal obtained several years later did not rejuvenate the then-expired AEDPA statute of limitations period pursuant to this court's prior interpretation and application of <u>Salinas v. Dretke</u>, 354 F.3d 425, 430 (5th Cir.), <u>cert. denied</u>, 541 U.S. 1032 (2004).  In <u>Salinas</u>, the Fifth Circuit held that the granting of a request for out-of-time review tolls the AEDPA limitations period, but it does not restart the running of that period.  <u>See also</u>, <u>McGee</u>, 104 Fed. Appx. at 991-992 (applying <u>Salinas</u> rationale to Louisiana out-of-time writ application).  However, <u>Salinas</u> did not address the impact on the AEDPA statute of limitations where the out-of-time review is favorable to the state prisoner and results in a resentencing, as is the case with Wells.

The record in this case demonstrates that when Wells was finally granted an out-of-time appeal, he was successful on appeal with regards to the impropriety of his sentence.  He was ultimately resentenced as a multiple offender on July 16, 2003.  He also appealed from that resentencing and has continued in his pursuit of post-conviction relief since that time to within less than one year before filing the instant federal habeas corpus petition.

While <u>Salinas</u> is the controlling law of the Fifth Circuit, there is a split among the circuit courts as to the effect of a resentencing on the ability of a petitioner to revive expired claims challenging the underlying conviction.  <u>See</u> <u>Fielder v. Varner</u>, 379 F.3d

113 (3rd Cir. 2004) (refusing to allow revival of already expired claims in a late filed petition brought after resentencing); Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003) (allowing consideration of late filed petition containing both expired claims challenging the conviction and claims challenging the resentencing).

The issue has been raised to the United States Supreme Court in Secretary, Department of Corrections v. Ferreira, No. 07-1008, 2008 WL 320496 (U.S. 2008).  In Ferreira, the petition for certiorari seeks review of a decision by the United States Eleventh Circuit Court of Appeals, after prior remand from the Supreme Court, in which the circuit court held that a federal habeas petition was timely, even though it was filed by the state prisoner more than five years after he was convicted, but only 57 days after his corrected sentence imposed on resentencing became final.  Ferriera v. Secretary, Dept. of Corrections, 494 F.3d 1286 (11th Cir. 2007) (ruling on remand).

The Eleventh Circuit resolved that Ferreira's federal petition was filed within one year of the date, i.e. the resentencing date, that the state court judgment, pursuant to which he was in custody became final.  The Eleventh Circuit held this to be so even though Ferreira's federal habeas petition challenged only his underlying conviction and not the corrected sentence imposed on resentencing.  The petition for certiorari is pending review by the United States Supreme Court.

18

Similarly, in this case, Wells was successful in obtaining a corrected sentence on re-sentencing more than five years after his underlying conviction was otherwise final. He continued to pursue state court relief, which acted to toll the AEDPA statute of limitations during the next few years, before coming to this court with the instant federal petition. The opinions in Salinas and McGee do not address the effect of successful out-of-time appeals or the running of time after resentencing. In light of the issue now before the Supreme Court, which may affect the application of Salinas and McGee to Wells's petition, I recommend that this court not address the State's timeliness argument at this time, particularly since there are other reasons clearly apparent in the record on which the requested relief must be denied.

2.    Equitable Tolling

In addition, the interests of justice would be better served by application of the doctrine of equitable tolling. The United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

19

Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. <u>Pace</u>, 544 U.S. at 417-19; <u>Cousin</u>, 310 F.3d at 848; <u>see also</u>, <u>See United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, the record reflects that Wells's apparent inaction that necessitated the initial filing for post-conviction relief and the out-of-time appeal probably resulted from trial counsel's representations to the state trial court regarding direct appeal, which were also apparently a factor in the granting of the out-of-time appeal. This situation may

have accounted for the delay which caused his AEDPA filing period to run without tolling for more than two years.

Specifically, at the sentencing hearing held on October 16, 1997, Wells's trial counsel apparently gave notice to the state trial court of Wells's intent to appeal.[51]  Wells was present at this hearing and must have heard his counsel.  Wells apparently accepted this representation and did nothing on his own, relying upon these representations, until he contacted counsel to pursue relief on the basis of ineffective assistance of counsel and constructive denial of the right to appeal.

In my view, these circumstances constitute grounds for equitable tolling, since Wells had reason to believe, based on the exchange between his counsel and the state trial court at the sentencing hearing, that his appeal would be filed by his counsel.  See Vineyard v. Dretke, 125 Fed. Appx. 551 (5th Cir. Mar. 14, 2005); Mendez v. U.S., 2007 WL 2088382 (W.D. Tex. Jul. 17, 2007) (citing United States v. Wynn, 292 F.3d at 330). I therefore recommend that the interests of justice would be better served if this court rejects the State's limitations defense and proceeds to address Wells's claims on other grounds.

---

[51]St. Rec. Vol. 3 of 7, Sentencing Minutes, 10/16/97.

B.     EXHAUSTION DEFENSE

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 177-79.

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the

petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420).

The State argues that Wells has not exhausted state court remedies because five of his claims were dismissed in state court on procedural grounds and therefore are not exhausted. As is often the case, "[t]he State seems to be confusing this procedural default, which precludes review by federal courts of such claims, with the AEDPA requirement of exhaustion, i.e., that a claim must have been presented in a procedurally proper manner to the highest state court before a federal court may review it." (footnotes omitted) <u>Simmons v. Cain</u>, 2008 WL 695386 at *5 (E.D. La. Mar. 12, 2008) (Berrigan, J) (citing <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996)).

In this case, Wells has given the state courts, including the Louisiana Supreme Court, the opportunity to address each of his claims. The state courts' decisions to reject those claims on procedural grounds does <u>not</u> render them unexhausted. <u>Simmons</u>, <u>id.</u> The State's suggestion to the contrary must be rejected.

The record demonstrates that Wells's claims are exhausted. This court, however, need not address the substantive merits of Wells's claims. I find that five of his claims are in procedural default, as argued by the State, and are therefore procedurally barred from federal review. His sixth claim, which is not procedurally barred, is without merit.

23

IV.    PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Although Wells's procedural history is convoluted, the record demonstrates that the ultimate resolution of each of the claims raised in the instant habeas petition occurred in the last reasoned decisions of the Louisiana Supreme Court in writ application Nos.

24

2005-KH-1979 and 2006-KH-0791, which relied on La. Code Crim. P. art. 930.3, State

ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P.

art. 930.4.

Wells's first claim alleges that the resentencing violated double jeopardy and

resulted in a 40-year prison sentence rather than a 30-year prison sentence.  The double

jeopardy portion of the argument was raised in Wells's second appeal.  The last reasoned

decision on that issue was that of the Louisiana Fifth Circuit, which held that double

jeopardy provisions did not apply to multiple offender adjudications.[52]

The balance of petitioner's arguments in support of the first claim, regarding the

effective length of his enhanced sentence, were raised in his motion to correct illegal

sentence.  The last reasoned decision on the issue was that of the Louisiana Supreme

Court in writ application No. 2005-KH-1979, which was denied on procedural grounds

pursuant to La. Code Crim. P. art. 930.3 and State ex rel. Melinie.  To the extent the latter

issues were arguably raised again in his last application for post-conviction relief, the

claim was denied on procedural grounds by the Louisiana Supreme Court in writ

application No. 2006-KH-0791, which relied upon La. Code Crim. P. art. 930.3, State ex

---

[52]The Louisiana Supreme Court denied the subsequent writ application No. 05-KH-0402 without reasons.

rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.

Petitioner's second claim, lack of jurisdiction over the untimely multiple bill, was first raised in the second appeal. The Louisiana Fifth Circuit barred review of the claim because the timeliness of the bill was not raised to the state trial court and could not be raised for the first time on appeal.[53] Wells asserted this claim again in his application for post-conviction relief filed on October 31, 2005. The last reasoned decision on that application was rendered by the Louisiana Supreme Court in writ application No. 2006-KH-0791, which relied on La. Code Crim. P. art. 930.3, State ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.

The third claim, that the jury heard inadmissable "other crimes" evidence, was raised in Wells's first appeal. The Louisiana Fifth Circuit denied relief, finding that any error was harmless. Wells did not seek further review, so the claim was not presented to the Louisiana Supreme Court at that time. He raised the claim again in his October 31, 2005, application for post-conviction relief. The claim was ultimately denied on procedural grounds by the Louisiana Supreme Court in writ application No. 2006-KH-0791, which relied on La. Code Crim. P. art. 930.3, State ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.

_____

[53]Id.

His fourth and fifth claims, both addressing the denial of a jury at the multiple bill hearing, were raised in the application for post-conviction relief filed on October 31, 2005.  The claims were ultimately denied on procedural grounds by the Louisiana Supreme Court in writ application No. 2006-KH-0791, which relied on La. Code Crim. P. art. 930.3, State ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.

Wells's sixth and final claim, improper closing arguments, was first raised in his November 27, 2000, application for post-conviction relief.  The record shows that the application was initially denied by the trial court as untimely under La. Code Crim. P. art. 930.8.  The Louisiana Fifth Circuit reversed and remanded for further review.  The trial court on remand did not address any of the issues and instead granted Wells an out-of-time appeal.  This claim was not raised again until the October 31, 2005 application for post-conviction relief.  The last reasoned decision on the issue came from the Louisiana Supreme Court in writ application No. 2006-KH-0791, which relied upon La. Code Crim. P. art. 930.3, State ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.

The bars imposed by the Louisiana Supreme Court indicate that the first five of Wells's claims, now before this court, were inappropriate for post-conviction review, untimely and otherwise impermissibly successive under Louisiana law.

27

A.       INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

1.       La. Code Crim. P. Art. 930.3 and State Ex Rel. Melinie

The Louisiana Supreme Court relied upon La. Code Crim. P. art. 930.3 and Melinie in dismissing Wells's claims, which clearly indicates that the claims were barred from review because they were not appropriately raised on post-conviction review.

This court has repeatedly held that both Melinie and La. Code Crim. P. art. 930.3 are independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  See, e.g., Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Art. 930.3 and State ex rel. Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).

28

I find that the bar imposed under La. Code Crim. P. art. 930.3 and <u>Melinie</u> is also independent and adequate to bar review of the merits of part of Wells's first claim regarding length of sentence, as well as his second, fourth, fifth and sixth claims.

2.    <u>La. Code Crim. P. Art. 930.8 and State Ex Rel. Glover</u>

The United States Fifth Circuit Court of Appeals in <u>Glover v. Cain</u> held that denial of relief premised on the untimeliness of a claim under Article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine.  <u>Glover</u>, 128 F.3d at 902.  The same is true in this case.  The Louisiana Supreme Court's ruling was clear and express in its reliance on Article 930.8 and <u>State ex rel. Glover</u> when denying Wells's 2006 writ application.

The United States Fifth Circuit has also squarely held that because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate" rule, <u>i.e.</u>, it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."  <u>Id.</u> (citing <u>Dugger v. Adams</u>, 489 U.S. 401, 410 n.6 (1989); <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988); and <u>Amos</u>, 61 F.3d at 339).

Because the Louisiana Supreme Court's decision rested on an independent and adequate state rule of procedural default, this court may not review Wells's first claim

regarding length of sentence, as well as his second, third, fourth, fifth and sixth federal habeas claims.

3.      La. Code Crim. P. Art. 930.4(A)

The bars to repetitive claims and successive petitions found in La. Code Crim. P. art 930.4 are clearly independent state law procedural bases for denying review of an inappropriately raised post-conviction claim. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (same). I note, however, that the bar in Article 930.4(A) prevents further review of a claim previously raised on appeal, based on the assumption that an issue was addressed in a prior proceeding and is now repetitive. The presumption in the rule is that the claims were not new or different from something previously addressed and resolved on appeal. Bennett, 41 F.3d at 1583. "[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id.

For this reason, the bar imposed on post-conviction review does not affect this court's ability to consider on habeas review the state court's underlying review of a claim considered on direct appeal. This court must therefore look back to the underlying basis for the original denial of relief to determine whether the claim is appropriate for federal

habeas review or if it is procedurally barred from review in some other way.  Three of Wells's federal claims were raised in his prior appeals.

a.    Double Jeopardy Portion of Claim No. One

Wells's first double jeopardy argument was raised by his counsel in his second appeal after his resentencing.  The Louisiana Fifth Circuit denied the claim as meritless and the Louisiana Supreme Court did not offer additional reasons for its denial of the subsequent writ application.  This claim is not in procedural default or barred from review.  It will be addressed on the merits later in this report.

b.    Lack of Jurisdiction (Claim No. Two)

As for Wells's second claim, the Louisiana Fifth Circuit barred review of the claim because the timeliness of the bill was not raised or challenged in the state trial court and could not be raised for the first time on appeal.  The claim was also later denied as improper under La. Code Crim. P. art. 930.3.

Under Louisiana law, a claim cannot be raised on appeal unless it was preserved by timely objection in the trial court.  The principal Louisiana statutory provision requiring contemporaneous objection is La. Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  Tasco v. Butler, 835 F.2d 1120, 1124 (5th Cir. 1988).  It is well-settled that Louisiana's contemporaneous-objection rule is an independent and

31

adequate state procedural ground, regularly applied by the Louisiana courts.  Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)); Marshall v. Cain, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.). When the state court relies on this procedural default in dismissing a claim, as it did here, the claim is barred from federal habeas review.  Duncan, 278 F.3d at 541; Riles v. McCotter, 799 F.2d 947, 953 (5th Cir. 1986) (challenge to state's expert was procedurally barred from federal habeas review where state applied procedural default for failure to object at trial).  For these reasons, the court need not address the substance of Wells's second claim.

c.    Other Crimes Evidence (Claim No. Three)

Wells's third claim, that the jury heard "other crimes" evidence, was raised in his first appeal.  The Louisiana Fifth Circuit denied relief finding the error harmless.  He did not seek further review in the Louisiana Supreme Court at that time.  However, the appellate decision was not the last reasoned decision.  The last reasoned decision on the issue was on post-conviction review, when the Louisiana Supreme Court, hearing the claim for the first time, denied relief in writ application No. 2006-KH-0791, based on La. Code Crim. P. art. 930.3, State ex rel. Melinie, La. Code Crim. P. art. 930.8, State ex rel. Glover, and La. Code Crim. P. art. 930.4.  The state law procedural bars under Articles

930.3 and 930.8 are total bars to review, as discussed above.  Thus, this court need not address the merits of Wells's third claim.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Wells has not offered any cause for the default which would excuse the procedural bars imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Wells from raising

these claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Wells's challenge to his sentence in Claims one, two, three, four, five and six are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[54]

C.      FUNDAMENTAL MISCARRIAGE OF JUSTICE

Wells may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing

---

[54]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

<u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Glover</u>, 128 F.3d at 903.

Wells does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the underlying criminal proceedings and sentence, not his actual innocence.  He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state courts.

For these reasons, Wells has failed to overcome the procedural bar to his claims. Wells's challenge to his sentence in claim one, and claims two, three, four, five and six, are procedurally barred and must be dismissed with prejudice for that reason.

V.    STANDARDS OF MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S.

849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry</u>, 532 U.S. at 792-93;

<u>Hill</u>, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.</u>

<u>denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25);

<u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   <u>DOUBLE JEOPARDY (CLAIM NO. ONE)</u>

Wells argues that the prohibition against double jeopardy was violated by his multiple offender adjudication.  He references the fact that he was charged as a second offender in the amended bill of information and sentenced as such.  On appeal, the Louisiana Fifth Circuit determined that it was error to rely on the allegations of the amended bill of information and noted that there was no other evidence of record to support a multiple offender adjudication under the habitual offender laws.  From this, Wells argues that his first multiple offender "adjudication" was reversed based on insufficient evidence.  He further argues that the State should not have been allowed to file a "second" multiple bill.

This claim was raised by Wells in his second appeal and denied because double jeopardy considerations do not apply to multiple offender adjudications.  The Louisiana Supreme Court denied the subsequent writ application without reasons.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  The Supreme Court has held that the Double Jeopardy Clause protects against successive prosecutions for the same

offense after acquittal or conviction and against multiple criminal punishments for the same offense.  See North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

The Supreme Court, however, has found that double jeopardy protections are inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an "offense."  Monge v. State of California, 524 U.S. 721, 727 (1998) (citing Bullington v. Missouri, 451 U.S. 430, 438 (1981); Nichols v. United States, 511 U.S. 738, 747 (1994)).  The Supreme Court has also held that the states have a valid interest in determining and segregating habitual offenders and are free to define the type of conviction that may be used in the proceedings, although that freedom is not unlimited.  Parke v. Raley, 506 U.S. 20, 27 (1992).

The Supreme Court does not consider sentence enhancements to be additional punishment for a previous offense; rather, they act to increase a sentence "'because of the manner in which [the defendant] committed the crime of conviction.'"  Monge, 524 U.S. at 727-728 (quoting United States v. Watts, 519 U.S. 148, 154 (1997) (per curiam) and (citing Witte v. United States, 515 U.S. 389, 398-399 (1995)).  An enhanced sentence imposed on a multiple offender is not a new jeopardy or additional penalty for the earlier crime, but is instead a heightened penalty for the latest conviction.  Id. (citing Gryger v. Burke, 334 U.S. 728, 732 (1948)); Moore v. Missouri, 159 U.S. 673, 678 (1895) ("[T]he

State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offences than for a first offence").

In this case, Wells was not placed twice in jeopardy of a conviction on the same offense.   Instead, he was properly charged only once as a multiple offender. Furthermore, the ruling by the Louisiana Fifth Circuit was not a finding of insufficient evidence to support his multiple offender adjudication.  The court instead found that the State could not seek enhancement by merely amending the original bill of information to reference the drug crime sentencing enhancement statute.  The court referenced the proper procedures under Louisiana's habitual offender laws.  Wells is not entitled to the protections of the Double Jeopardy Clause where he was not placed in jeopardy through Louisiana's habitual offender laws.

Wells has failed to establish that the state court's denial of relief was contrary to or in violation of established Supreme Court precedence.  He is not entitled to relief on this claim.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that the petition of Tirrell Wells for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___14th___ day of May, 2008.


                          JOSEPH C. WILKINSON, JR.
                          UNITED STATES MAGISTRATE JUDGE